IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                   |   |                              |
|-----------------------------------|---|------------------------------|
|                                   | : |                              |
| U.S. EQUAL EMPLOYMENT             |   |                              |
| OPPORTUNITY COMMISSION            | : |                              |
|                                   |   |                              |
| v.                                | : | Civil Action No. DKC 09-2570 |
|                                   |   |                              |
|                                   | : |                              |
| CTI GLOBAL SOLUTIONS, INC.        |   |                              |
|                                   | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action are the motion for partial summary judgment filed by the Plaintiff Equal Employment Opportunity Commission ("EEOC") (ECF No. 25) and the cross-motion for partial summary judgment filed by Defendant CTI Global Solutions, Inc. (ECF No. 30). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion will be granted in part and denied in part, and Defendant's cross-motion will be denied.

## I. Background

### A. Factual Background

The following facts are undisputed unless otherwise stated.

### 1. CTI Global Solutions and the ARC Project

Defendant is a government contractor and recruiting company that has supplied staff for government projects since 1989. (ECF No. 25-2, Whitfield Dep., at 26; ECF No. 25-1, at 2).

Employees earn wages only if Defendant staffs them on contracting assignments. (ECF No. 25-4, Moore Dep., at 69). Defendant contracted with the FBI to prepare 20 million documents at the FBI's Alexandria Records Center ("ARC") for shipment, and in September 2008, Defendant began staffing its employees on this long-term, full-time project. (ECF No. 25-3, Carroll Dep., at 45; ECF. No. 25-1, at 2). The advertisement that Defendant posted for this position stated that it required the ability to lift 20 pounds. (ECF No. 25-4, Moore Dep., at Ex. 17). The job description of the position that employees received at orientation, however, required the ability to lift 25 pounds and to climb ladders. (ECF No. 25-4, at 105). Although Defendant neither solicited information on these criteria in employee applications nor tested its employees to verify their ability to lift and climb, it did inquire of their ability to perform these functions during ARC project orientation. (*Id.* at 59; ECF No. 25-2, at 39).

## 2. Rita Tolliver's Placement and Removal

Defendant hired Rita Tolliver to staff an open ARC project position in October 2008, and Tolliver was "visibly pregnant" at that time. (ECF No. 25-5, Tolliver Decl., ¶¶ 1-3). During Tolliver's orientation, Rodney Whitfield, Defendant's Chief Financial Officer ("CFO"), observed Tolliver's pregnancy and requested that she accompany him outside the orientation room.

(*Id.* at ¶¶ 6-7; ECF No. 25-2, at 48).   Whitfield confirmed Tolliver's pregnancy before removing her from the ARC project due to his concerns for Tolliver and her unborn child if she performed the lifting and climbing functions of her position (ECF No. 25-2, at 62; ECF No. 25-3, Ex. 3).   Tolliver informed Whitfield that "this was [her] fourth pregnancy," that she "knew [her] limitations," and that she "was capable of performing the work."   (ECF No. 25-5 ¶ 9).   Whitfield, however, insisted on Tolliver's removal, noting that Tolliver was the "same as a boxer who gets knocked out – who all of a sudden says I'm fine to the referee and the referee says, no, I don't think you can." (ECF No. 25-2, at 74).

Following Tolliver's removal from the ARC project, Whitfield informed Dr. Dee Carroll, Defendant's President and Chief Executive Officer ("CEO"), of these events, and Carroll concurred in his decision.   (ECF No. 25-3, Ex. 3).   Although Whitfield and Carroll subsequently prepared a position statement documenting the potential health risks of Tolliver's position for her health and the health of her unborn child, Carroll acknowledged that these medical concerns were "irrelevant" to Tolliver's removal, which occurred solely due to her pregnancy. (*Id.*; ECF No. 25-3, at 82; ECF No. 25-1, at 12).[1]   Louvenia

---

[1] In their depositions, Carroll and Keith Moore, Defendant's Operations Manager, assert that the FBI had a policy prohibiting

Williams, Defendant's legal counsel, then contacted Tolliver to inform her that Defendant had concluded that the lifting and climbing requirements of her position would be too "strenuous" during pregnancy and offered to meet with Tolliver to discuss other placement options. (ECF No. 25-3, Ex. 3). This meeting, however, never took place, and Carroll later conceded that no other available positions existed on which to staff Tolliver at that time. (*Id.*; ECF No. 25-3, at 64).

### 3. Anje Proctor and Alfre Tisdale's Placement and Removal

Anje Proctor and Alfre Tisdale applied for positions on the ARC project in late 2008 and early 2009, respectively. (ECF No. 25-9, Proctor Decl., ¶ 8; ECF No. 25-8, Tisdale Decl., ¶ 12). Although the job descriptions for which Defendant hired them included climbing and lifting duties, Proctor and Tisdale rarely, if ever, engaged in either of these activities. (ECF No. 25-9 ¶ 5; ECF No. 25-8 ¶ 5). Both women became pregnant in the spring of 2009. (ECF No. 25-9 ¶ 6; ECF No. 25-8 ¶ 7).

Tisdale's physician recommended that she refrain from climbing ladders and lifting more than 15 pounds, and Tisdale subsequently submitted this request to Defendant in June 2009.

---

pregnant women from working on the ARC project. (ECF No. 25-3, at 74, 82; ECF No. 25-4, at 65.) Leslie Payne, an FBI employee and the chief liaison between Defendant and the FBI, contests this assertion. (ECF No. 25-7, Payne Aff., ¶ 4). As explained in footnote 6, however, this factual dispute is immaterial to the ultimate disposition of this action.

(ECF No. 25-8 ¶¶ 8-10).[2]  Defendant initially accommodated this request, during which time "everything ran smoothly," no other employee had to lift or climb a ladder to aid her in performing her position, and Bernard Fisher, Defendant's program manager for the ARC project, had "no criticisms of her performance." (*Id.* at ¶ 11; ECF No. 25-11, Fisher Dep., at 46, 50).

At some point, Fisher informed Keith Moore, Defendant's Operations Manager, of Tisdale's work restrictions due to her pregnancy.  (ECF No. 25-4, at 84-85).  Although Defendant's interrogatories later identified two ARC project employees with lifting and climbing restrictions whom it had "temporarily" accommodated, Elaine Wright, an ARC project program manager supervised by Fisher, asserted that Defendant had not previously placed any ARC project employees on light duty.  (ECF No. 31-1, at 11-12; ECF No. 30-4, Wright Dep., at 73-74).  Fisher

_____

[2] During one portion of his deposition, Moore suggests that Proctor may have also submitted a doctor's note requesting light duty.  (*See* ECF No. 25-4, at 65 ("I'm not sure . . . I believe [Proctor] either had a doctor's note or – I can't remember exactly.").  Plaintiff's brief and the remainder of the record, including Moore's own deposition, contradict this statement. *See, e.g.*, *id.* at 67 (acknowledging that Proctor could have continued working on the ARC project "[i]f the FBI didn't . . . have this issue with pregnant women"); ECF No. 25-11, at 42 (noting that Defendant removed Proctor from the project "due to her pregnancy")).  Although it appears that Moore likely confused the details of Tisdale's case with Proctor's when suggesting that Proctor requested light duty, this discrepancy nonetheless remains.  Because Defendant does not raise this inconsistency at any point in its brief, however, the court will disregard it when addressing the currently pending motions.

simultaneously reported Proctor's pregnancy to Moore "out of fear" for her safety.  (ECF No. 25-11, at 43-44).

Moore removed Tisdale and Proctor from the ARC project on July 8, 2009, informing Tisdale that her removal occurred due to her pregnancy and "for fairness," and informing Proctor that "pregnant women could not work in the FBI file room."  (ECF No. 25-8 ¶ 12; ECF No. 25-9 ¶ 8).  Tisdale and Proctor returned to Defendant's office for reassignment, but Defendant did not immediately reassign either employee to a full-time position. (ECF No. 25-8 ¶ 13; ECF No. 25-9 ¶ 9).

### 4.  Mitigation Efforts of Removed Employees

Following their removal from the ARC project, Tolliver, Proctor, and Tisdale each sought new employment.  Tolliver first attempted to meet with Whitfield and Carroll to discuss her removal and potential reassignment.  (ECF No. 25-5 ¶¶ 12-13). When Whitfield refused to provide written confirmation of the meeting date, Tolliver refused to attend the meeting.  (*Id.* at ¶¶ 14-15).  Carroll later conceded, however, that Defendant had no positions "in mind" for Tolliver at the scheduled meeting time.  (ECF No. 25-3, at 64).  Tolliver also "networked heavily, posted resumes online, applied for numerous positions, and attended job fairs."  (ECF No. 25-5 ¶ 23).  She obtained "sporadic" employment translating for attorneys representing a prisoner at Guantanamo Bay, and, although the work "forced [her]

to be away" from her family, she accepted the position because her family "could not afford for [her] to be without paid work." (*Id.* at ¶ 17).

Shortly after her removal from the ARC project in July 2009, Proctor posted resumes on CareerBuilder.com and Monster.com. (ECF No. 25-9 ¶ 12). Proctor also asserts that she accepted temporary one-day assignments that Defendant offered her because she "needed to have an income and no better paying job was available." Defendant contests this assertion, submitting an affidavit from Carroll contending that Proctor declined not only many of the proffered temporary assignments, duration unspecified, but also a long-term placement at the Pentagon that would have begun on October 1, 2009. (ECF No. 30-7, Carroll Aff., ¶¶ 4-5). Proctor ultimately took a higher paying job with another staffing agency during October 2009, and she seeks no back pay beyond that time. (ECF No. 25-9 ¶ 13; ECF No. 25-1, at 9).

Tisdale has applied for more than 100 available positions and participated in networking activities since her removal from the ARC project. (ECF No. 25-8 ¶ 20). She also enrolled in information technology classes to improve her chances of obtaining employment. (*Id.* at ¶ 22). Both parties agree that Defendant offered Tisdale a limited number of temporary employment opportunities following her removal, but the record

is unclear regarding the duration of the temporary employment and number of offers. (ECF No. 25-1, at 8; ECF No. 30-1, at 4). It appears that Tisdale declined many of these offers. (ECF No. 30-7 ¶ 6).

Defendant offered Tisdale a long-term placement at the Pentagon in October 2009, and Tisdale accepted the position. (ECF No. 25-8 ¶ 16). Tisdale asserts that the Pentagon placement paid less than her position on the ARC project, but Defendant contests this assertion, citing Carroll's affidavit. (*Id.* at ¶ 17; ECF No. 30-7 ¶ 7). Tisdale earned $16/hour, *with benefits*, on the ARC project, while she earned $17.24/hour, *without benefits*, at the Pentagon. (ECF No. 31-2, Tisdale Decl., at 1). Tisdale took unpaid leave under the Family and Medical Leave Act in December 2009 and did not return to her placement at the Pentagon. (ECF No. 25-8 ¶ 19; ECF No. 30-1, at 4). At the time Tisdale took leave, she had not received some of her paychecks on time and Defendant had entered bankruptcy. (ECF No. 31-2, at 2). Tisdale thus maintains that work at the Pentagon "was not available after [she] gave birth," but Carroll contests this assertion by noting that Defendant could have placed Tisdale "in her prior or an equivalent position" if Tisdale had contacted Defendant about that possibility. (ECF No. 25-8 ¶ 19; ECF No. 30-7 ¶ 11).

8

**B.    Procedural Background**

Following its investigation of the events described above, Plaintiff EEOC filed the present action against Defendant on September 29, 2009.   (ECF No. 1).   Plaintiff alleged that Defendant's removal of Tolliver, Tisdale, and Proctor from the ARC project violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), and sought both injunctive and monetary relief.   (ECF No. 1).   Defendant waived service of process and answered the complaint on November 30, 2009, denying Plaintiff's allegations and raising an affirmative defense of failure to mitigate damages as to each of the removed employees.   (ECF No. 4; ECF No. 5 ¶ 18).[3]   The court entered an initial scheduling order the following day, but subsequently extended the discovery and motions deadlines to June 15, and July 16, 2010, respectively. (ECF No. 6, at 2; ECF No. 9).

Defendant filed a suggestion of bankruptcy on December 14, 2009, requesting that the court stay its proceedings pursuant to 11 U.S.C. § 362, and the court granted this request and administratively closed the case.   (ECF Nos. 10-11).   Contending

---

[3]   Defendant's answer also listed Plaintiff's failure to engage in good faith conciliation efforts and the removed employees' failure to exhaust administrative remedies as affirmative defenses.   (ECF No. 5 ¶ 15-17).   Defendant fails to raise either of these defenses in opposition to Plaintiff's motion for partial summary judgment.

that the automatic stay did not apply because the EEOC had brought the action to enforce its police or regulatory power, Plaintiff moved to reopen the case. (ECF No. 12, at 2-4). On January 25, 2010, this court issued an order granting Plaintiff's motion and reopening the proceedings. (ECF No. 14). Subsequent scheduling orders required the parties to complete discovery by January 14, 2011 and to submit all pretrial motions to the court by February 22, 2011. (ECF Nos. 19, 21).

On February 22, 2011, Plaintiff filed a motion for partial summary judgment, asserting that Defendant unlawfully discriminated against Tolliver, Tisdale, and Proctor as a matter of law and that no evidence existed to support Defendant's failure-to-mitigate defense. (ECF No. 25-1). Defendant responded to Plaintiff's motion on March 23, 2011, opposing only portions of the motion and submitting a cross-motion for partial summary judgment as to Tisdale's failure to mitigate damages. (ECF No. 30-1). Plaintiff replied to Defendant's opposition and cross-motion on April 11, 2011. (ECF No. 31-1).

## II.  Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary

judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks

omitted).   *See also havePower, LLC v. Gen. Electric Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003) (citing 10A Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).   The court reviews each motion under the familiar standard for summary judgment, *supra*.   The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."   10A *Federal Practice & Procedure* § 2720.

**III. Analysis**

Plaintiff moves for partial summary judgment on two grounds.   First, Plaintiff asserts that Defendant removed Tolliver, Tisdale, and Proctor from the ARC project based solely on their pregnancies and in violation of Title VII, as amended by the PDA.   (ECF 25-1, at 10).   Second, Plaintiff contends that Defendant's affirmative defense for failure to mitigate fails as a matter of law due to lack of evidence.   (*Id.* at 18-19).   Although Defendant does not oppose Plaintiff's request for summary judgment on the issue of liability as to Tolliver and Proctor, it opposes Plaintiff's motion as to liability for Tisdale's removal and as to each removed employee's mitigation efforts.   (ECF No. 30-1, at 3-8).   Defendant also cross-moves for partial summary judgment in its favor as to mitigation of Tisdale's damages.

12

## A.    Sex/Pregnancy Discrimination

Title VII "prohibits various forms of employment discrimination, including discrimination on the basis of sex." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 276-77 (1987).  When enacting the PDA, Congress clarified that "[t]he terms 'because of sex' or 'on the basis of sex' include . . . pregnancy . . . and [that] women affected by pregnancy . . . shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

A plaintiff may establish claims for intentional discrimination on the basis of pregnancy using two methods. First, the plaintiff may demonstrate "through direct or circumstantial evidence" that her pregnancy "motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). Alternatively, a plaintiff may "proceed under a 'pretext' framework" – commonly referred to as the McDonnell Douglas approach – "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination." *Id.* at 285. Only the former method is at issue in the present case.

Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quotation marks omitted).  If believed, direct evidence "would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (quotation marks omitted), *rev'd on other grounds by* 517 U.S. 308 (1996).  To defeat a motion for summary judgment, the evidence must show that the employer announced, admitted, or "otherwise unmistakably indicated" that an impermissible consideration was a determining factor, or that discrimination can properly be assumed from the circumstances. *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982).  Here, Plaintiff presents direct evidence that Defendant discriminated against each removed employee based on pregnancy, with genuine issues of material fact remaining only in regard to Tisdale's discrimination claim.

## 1.   Summary Judgment is Warranted as to Tolliver and Proctor's Sex Discrimination Claims

Plaintiff sets forth statements that Defendant's agents made to Tolliver and Proctor immediately following their removal as direct evidence that the removal resulted solely due to their pregnancy. (ECF No. 25-1, at 3, 6, 7, 11).  For instance,

Tolliver contends that, when she inquired about the reason for the removal, Whitfield informed her that he had removed her from the ARC project due to her pregnancy. (ECF No. 25-5 ¶ 8). Similarly, Proctor asserts that Moore told her that her termination from the project resulted "because pregnant women could not work in the FBI file room." (ECF No. 25-9 ¶ 8).[4] Although Defendant does not contest its liability to Tolliver and Proctor as to their sex discrimination claims, these statements are also relevant to Tisdale's sex discrimination claim.

Stray or isolated remarks may not qualify as direct evidence in employment discrimination actions, but derogatory employer remarks demonstrating "some nexus . . . between the alleged discriminatory statements and *any* of the employment decisions made by the [employer]" will suffice. *O'Connor*, 56 F.3d at 549. Courts have considered the context of the statement, its temporal proximity to the adverse employment action, and the status of the person making the statement in

---

[4] In addition to the statements that Tolliver and Proctor allege Whitfield and Moore made when removing them from the ARC project, the record is replete with statements by Defendant's agents during litigation acknowledging Tolliver and Proctor's removal on the basis of pregnancy. (*See, e.g.*, ECF No. 25-3, at 74 (stating that Defendant had removed Tolliver from the project "because of the pregnancy"); ECF No. 25-4, at 67, 99 (acknowledging that Defendant would not have removed Tolliver and Proctor if they were not pregnant); ECF No. 25-11, at 42, 46 (explaining that Proctor's removal occurred "because she was pregnant" and "due to her pregnancy")).

determining whether such a nexus exists. *See, e.g.*, *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) (finding an 18-month lag between a derogatory statement and the plaintiff's eventual termination insufficient to demonstrate a nexus between the statement and subsequent adverse employment action), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Where the derogatory statement bears little relation to the contested employment action and is attenuated by time, a plaintiff will likely fail to satisfy the nexus requirement. For example, in *O'Connor*, the United States Court of Appeals for the Fourth Circuit considered whether a supervisor's statements to a subsequently terminated employee demonstrated such a nexus in an age-related employment discrimination suit. *O'Connor*, 56 F.3d at 549. According to the plaintiff, his supervisor had stated that "[i]t's about time we get some young blood in this company" and that the plaintiff was "too damn old for this kind of work" within two weeks of plaintiff's termination. *Id.*

Evaluating these statements in turn, the Fourth Circuit found the first statement "innocuous" and merely "a commentary on the fact that all people age." *Id.* In addition, the court emphasized that no nexus existed to link the statement to the plaintiff's termination two days later because the supervisor had made the statement in response to another employee's comment

about his own upcoming 50th birthday, a context unrelated to the plaintiff's subsequent termination. *Id.* The court similarly rejected plaintiff's contention that the second statement qualified as direct evidence, noting that the plaintiff had failed to indicate the context in which his supervisor had made the remark. *Id.* The *O'Connor* court also seemed skeptical of the two-week time period that passed between the derogatory statement and plaintiff's ultimate termination. *See also Loveless v. John's Ford, Inc.*, 232 F.App'x 229, 234 (4th Cir. 2007) (finding that a sufficient nexus existed where the plaintiff's supervisor stated that "he need[ed] younger, more aggressive Managers" in response to the plaintiff's inquiry as to the reason for his termination).

Additionally, to satisfy the nexus requirement in a direct evidence case, the person making the statement must hold the status of "decisionmaker" within the defendant employer's organization. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment) ("[S]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, [do not] suffice to satisfy the plaintiff's burden."), *superseded by statute on other grounds by* 42 U.S.C. § 2000e*, et seq.; Hill*, 354 F.3d at 286-87. In *Hill*, the Fourth Circuit evaluated which agents of an employer could constitute a "decisionmaker,"

17

reasoning that the term encompasses both agents of the defendant with formal decisionmaking authority as well as those agents who possess "principal responsibility" for the employment decision. *See* 354 F.3d at 289, 297 (noting that direct supervisors may qualify as decisionmakers under this analysis).

Here, the statements made by Defendant's supervisory employees regarding Tolliver and Proctor both directly reflect Defendant's discriminatory attitude and bear on the contested employment action. Each of the remarks made by Whitfield, Carroll, and Moore in reference to Tolliver and Proctor's removal explicitly cites their pregnancy as the reason underlying Defendant's decision to remove them from the ARC project, thus directly reflecting Defendant's discriminatory attitude. In addition, Tolliver and Proctor have presented statements that bear on the adverse employment action because the remarks share a nexus with that action.[5] Unlike in *O'Connor*,

---

[5] In the present action, Plaintiff assumes, and Defendant does not contest, that the employees' removal from the ARC project — a long-term, full-time placement — constituted adverse employment action. An adverse employment action certainly includes hiring, firing, and demoting employees, but it also encompasses decreases in compensation and reassignment with substantially different responsibilities or opportunities for promotion. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375–76 (4th Cir. 2004). In the absence of any defense opposition on this ground, the employees' removal from the ARC project, without immediate reassignment to another long-term, full-time placement, appears to satisfy this threshold. Indeed, the removed employees earned no wages unless Defendant reassigned them, thus they suffered a decrease in compensation.

where the court found an insufficient nexus because plaintiff failed to connect the age-related statements to his termination, the remarks here occurred during conversations that directly addressed the reasons for Tolliver and Proctor's removal from the project and that immediately followed their removal. Tolliver and Proctor have thus provided a context for the statements that is intricately linked with the adverse employment action and have demonstrated temporal proximity between the statements and that action. They have also set forth statements made by persons likely to qualify as "decisionmakers," as Defendant's CFO (Whitfield) and Operations Manager (Moore) made the statements on which they principally rely. (ECF No. 25-1, at 3, 5).

Defendant wholly fails to challenge Plaintiff's allegations as to Tolliver and Proctor in its opposition, neither denying that the statements occurred nor arguing that the statements do not reflect a discriminatory attitude or lack a nexus to the contested employment action. Therefore, because Plaintiff has presented direct evidence that Defendant discriminated against Tolliver and Proctor due to pregnancy, and Defendant has not created any genuine issue of material fact to the contrary, summary judgment for Plaintiff on this ground is warranted.[6]

---

[6]    In its memorandum in support of its motion for partial summary judgment, Plaintiff preemptively asserts arguments to

**2.  Defendant Creates Material Issues of Fact Sufficient to Preclude Summary Judgment as to Tisdale's Sex Discrimination Claim**

Plaintiff asserts that direct evidence establishes that Defendant removed Tisdale from the ARC project due to her pregnancy. (ECF No. 25-1, at 6, 11).  In addition to presenting Tisdale's claim in light of the direct evidence of Tolliver and Proctor's unlawful removal due to pregnancy, Plaintiff specifically notes that Moore told Tisdale her removal occurred "because [she] was pregnant" and "for fairness." (ECF No. 25-8 ¶ 12).[7]  In response, Defendant contends that a legitimate, non-

---

counter any contention by Defendant that a legitimate reason existed for Tolliver and Proctor's removal from the ARC project. (ECF No. 25-1, at 11-18).  For instance, Plaintiff presents evidence to dispute any potential claim that Tolliver and Proctor's pregnancy prevented them from adequately performing their jobs.  (*Id.* at 11-12).  Plaintiff additionally sets forth two responses to any defense claim that Defendant removed the employees because the FBI prohibited pregnant women from working on the ARC project.  (*Id.* at 16-18).  First, Plaintiff alleges that, contrary to assertions by Defendant's agents, depositions from FBI personnel demonstrate that the FBI did not have such a policy.  (*Id.* at 16).  Second, assuming that such a policy exists, Plaintiff then cites case law holding that customer preferences alone are insufficient to justify the discrimination that occurred in the present case.  (*Id.* at 17).  The court need not reach these arguments, and any factual dispute created thereby, however, because Defendant does not oppose Plaintiff's motion seeking summary judgment as to liability regarding Tolliver and Proctor on any ground.

[7] As noted in regard to Tolliver and Proctor's claims above, the record contains numerous statements taken during the litigation in which certain of Defendant's agents acknowledge that Tisdale's pregnancy drove her removal from the ARC project. (*See, e.g.,* ECF No. 25-4, at 87 (noting that Defendant removed

discriminatory reason, rather than Tisdale's pregnancy, drove her removal. (ECF No. 30-1, at 3). Citing Tisdale's request that Defendant excuse her from lifting and climbing duties throughout her pregnancy, Defendant maintains that Tisdale's removal stemmed solely from this request for light duty, which Defendant asserts that it had not previously provided to other employees on the ARC project. (*Id.*).

As an initial matter, the remark set forth by Tisdale constitutes direct evidence of sex discrimination. Similar to the conclusion above regarding the statements about Tolliver and Proctor's removal, the remark here directly references Tisdale's pregnancy as the basis for the contested employment action, thus evincing a discriminatory attitude. In addition, Tisdale has presented evidence demonstrating a nexus between the statement and the adverse employment action. The remark occurred during a conversation about the reason for Tisdale's removal from the ARC project just after that removal occurred, thereby providing both a context for the statements that is directly linked to the adverse action and a temporal connection between the statements and that action. Furthermore, Defendant's Operations Manager (Moore) – a person likely to qualify as a "decisionmaker" within Defendant's organization – made the derogatory statement. (ECF

---

Tisdale because the FBI would not allow pregnant women to work on the ARC project); ECF No. 25-11, at 46 (same)).

No. 25-1, at 5, 6).   Defendant neither contests that these statements occurred nor argues that they do not evince a discriminatory attitude or lack a nexus to the contested employment decision.   Tisdale thus succeeds in presenting direct evidence of pregnancy discrimination.

Generally, after an employee presents direct evidence of discrimination based on pregnancy, an employer may not then avoid liability by demonstrating that an *additional* motivating factor for the adverse employment action is legitimate and non-discriminatory.   *See* 42 U.S.C. § 2003-2(m) (defining an unlawful employment practice to include those adverse actions with "sex . . . [as] a motivating factor . . . even though other factors also motivated the practice"); *Hill*, 354 F.3d at 284 (explaining that § 2003-2(m) "eliminate[s] the employer's ability to escape liability in Title VII mixed-motive cases by proving that it would have made the same decision in the absence of the discriminatory motivation").   This rule is inapplicable to the present action, however, because Defendant maintains that the *sole* factor motivating its decision to remove Tisdale from the ARC project was her inability to perform the requisite climbing and lifting functions of her position.   (ECF No. 30-1, at 3).

It is well-established that a pregnant employee's inability to perform required job functions may justify an employer's lawful decision to take adverse employment action against the

employee.  *See, e.g., Daugherty v. Genesis Health Ventures of Salisbury, Inc.*, 316 F.Supp.2d 262, 263-65 (D.Md. 2004) (concluding that a nursing home's refusal to provide light duty to a pregnant nursing assistant who could no longer perform the lifting requirements of her job did not violate the PDA because the nursing home also refused to accommodate non-pregnant employees requesting similar lifting restrictions).  Title VII, as amended by the PDA, does not require an employer "to treat disability arising from pregnancy *more favorably* than it treats other forms of temporary disability."  *Id.* at 265.  Indeed, only where the employer accommodates – or refuses to accommodate – its pregnant employees in a discriminatory manner will courts conclude that employment discrimination may have occurred.  *See* 42 U.S.C. § 2000e(k); *Ward v. Acme Paper & Supply Co.*, 751 F.Supp.2d 801, 805 (D. Md. 2010) (denying an employer's motion for summary judgment in a pregnancy discrimination action where the employer refused to provide the plaintiff with a 10-month light duty assignment because the plaintiff had submitted evidence that her employer had previously accommodated short-term light duty assignments for non-pregnant employees); *cf. Daugherty*, 316 F.Supp.2d at 264 (denying a pregnant plaintiff's motion for summary judgment because she had failed to provide evidence demonstrating that her employer had permitted non-

pregnant employees in similar positions to perform light duty
work when requested).

In the present case, similar to the defendant in *Daugherty*,
Defendant contends that Tisdale's inability to perform the
lifting and climbing functions of her position, rather than her
pregnancy itself, drove its decision to remove Tisdale from the
ARC project. (ECF No. 30-1, at 3). According to Defendant,
Tisdale's lifting and climbing restrictions effectively
prevented her from performing the required functions of the
position. (*Id.*). To support this contention, Defendant offers
numerous employee depositions which discuss the lifting and
climbing requirements of positions on the ARC project. (*E.g.*,
ECF No. 25-4, at 68; ECF No. 25-1, at 34-37).

Defendant further maintains that it could not place Tisdale
on light duty while she worked on the ARC project. (ECF No. 30-
1, at 3). Defendant specifically cites Elaine Wright's
deposition for this proposition, in which Wright stated that she
was not aware of ARC project supervisors previously
accommodating any employees with light duty positions. (ECF No.
30-4, at 73-74). Thus, like the defendant in *Daugherty* who did
not provide light duty positions for *any* employees, Defendant
here maintains that it did not provide such positions to any ARC
project employees. (ECF No. 30-1, at 3). Defendant then
asserts that the PDA does not require it to treat pregnant

employees more favorably than non-pregnant employees by creating light duty positions for pregnant employees. (*Id.* at 3-4). In combination, the arguments and evidence cited above by Defendant serve to demonstrate a legitimate, non-discriminatory reason for Tisdale's removal, thereby creating genuine issues of material fact regarding Defendant's liability as to her sex discrimination claim.

Presumably in an effort to demonstrate that summary judgment in its favor is nonetheless warranted, Plaintiff replies by asserting that Defendant's refusal to provide light duty is "disingenuous" for two reasons. (ECF No. 31, at 2). First, Plaintiff contends that Defendant admitted in its interrogatories that it had previously provided light duty positions to two non-pregnant employees on the ARC project. (ECF No. 31-1, at 11-12). Second, Plaintiff insists that Defendant's refusal to provide a light duty position "rings hollow" because Leslie Payne, the chief liaison between Defendant and the FBI, had stated that the FBI would have accommodated Defendant's request to place Tisdale in a light duty position. (ECF No. 25-7 ¶ 16).

These reasons ultimately fail to support Plaintiff's request for summary judgment because they merely highlight additional issues of material fact that render summary judgment on the issue of Tisdale's sex discrimination inappropriate.

Indeed, as in *Ward*, where the court denied summary judgment after both parties presented conflicting evidence regarding light duty positions, here Plaintiff and Defendant have submitted contradictory evidence on the same issue. First, both parties present conflicting evidence regarding Defendant's prior use of light duty positions on the ARC project. Notably, while Tisdale offers Defendant's interrogatories admitting that it had provided temporary light duty positions to non-pregnant employees unable to lift and climb, Defendant offers Wright's deposition that Defendant had not previously accommodated such positions, thereby preventing it from accommodating Tisdale's long-term light duty request.

Second, Plaintiff and Defendant present conflicting evidence regarding the feasibility of light duty positions on the ARC project. Indeed, the factual discrepancy above between Defendant's interrogatories and Wright's deposition underscores the issue at the heart of *Ward* – whether provision of temporary light duty positions ultimately rendered it feasible for Defendant to provide a long-term light duty position to Tisdale. Additionally, although Plaintiff emphasizes that FBI personnel would have allowed Defendant to accommodate Tisdale and that Tisdale continued to perform her job satisfactorily even with restrictions, Defendant cites deposition testimony from its supervisors highlighting the necessity of the lifting and

climbing functions to Tisdale's position. A material factual dispute thus exists regarding the necessity of lifting and climbing on ARC project positions, further placing the feasibility of light duty positions on the ARC project in issue. Due to these material disputes of fact regarding Defendant's reason for removing Tisdale, Plaintiff's motion for summary judgment as to liability on Tisdale's sex discrimination claim is denied.

**B. Failure to Mitigate**

In addition to moving for summary judgment as to the sex discrimination claims, Plaintiff moves for summary judgment as to Defendant's affirmative defense that the removed employees failed to mitigate their damages, claiming that this mitigation defense fails as a matter of law. (ECF No. 25-1, at 19). Defendant, in response, opposes the motion for summary judgment as to all three removed employees and submits a cross-motion for summary judgment in its favor as to Tisdale's mitigation efforts. (ECF No. 30-1, at 1-2).

Title VII claimants have a statutory duty to mitigate damages resulting from their employers' discriminatory adverse employment actions. 42 U.S.C. §2000e-5(g) ("[A]mounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). This duty requires a claimant to act in a

27

reasonably diligent manner when "seeking and accepting new employment substantially equivalent to that from which [the claimant] was discharged." *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985). The defendant bears the burden of proving that a claimant has failed to mitigate damages stemming from a Title VII violation. *Miller v. AT&T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001). In the present case, both parties have set forth numerous arguments specific to each removed employee when addressing the mitigation issue. For that reason, in considering the parties' briefs on the issue, the court has evaluated each employee's mitigation efforts in turn, beginning with Tolliver.

## 1.  Defendant Fails to Create Material Issues of Fact Regarding Tolliver's Efforts to Mitigate Damages

Plaintiff sets forth both factual and legal arguments regarding the sufficiency of Tolliver's mitigation efforts. Plaintiff begins by noting that Tolliver "networked heavily, posted resumes online, applied for numerous positions, and attended job fairs" after Defendant removed her from the ARC project. (ECF No. 25-5 ¶ 23). Unable to locate similar employment despite these efforts, Tolliver, who is fluent in Swahili, accepted a job translating for prisoners at Guantanamo Bay during and immediately after her pregnancy because her family "could not afford for [her] to be without paid work."

(*Id.* at ¶¶ 16-17, 19, 21).   Plaintiff asserts that these actions, in combination, constitute sufficient damage mitigation despite Tolliver's failure to meet with Defendant regarding potential reassignment.

An employee who has suffered an unlawful adverse employment action may act with reasonable diligence, thereby sufficiently mitigating damages, by reviewing job advertisements, posting resumes, and applying for available positions.   *See, e.g.,* *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1253 (10th Cir. 2005) (upholding a jury verdict in plaintiff's favor and rejecting a failure-to-mitigate defense where plaintiff had applied for multiple jobs, reviewed classified job advertisements, and visited the state's job services center on a monthly basis); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1158 (10th Cir. 1990) (holding an employee's submission of applications and resumes sufficient to mitigate damages in an age-based employment discrimination action).   Additionally, although a claimant must seek comparable employment with reasonable diligence, the claimant need not "go into another line of work." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982).   Where a claimant does obtain employment in another field, even if only part-time, that claimant "satisfies [her] obligation to mitigate damages absent a showing by [the employer] that this action was not in good faith."   *See Xiao-Yue Gu v. Hughes STX Corp.*, 127

29

F.Supp.2d 751, 760 (D.Md. 2001) (rejecting a failure-to-mitigate defense where the plaintiff had relocated from Maryland to Massachusetts to obtain two part-time positions in another field).

Here, Tolliver's efforts satisfy this standard.  Tolliver asserts that she posted resumes and submitted applications, like the claimants in *Praseuth* and *Spulak*, as well as participated in job fairs and other networking activities.  In addition, although not legally required to accept the translation job at Guantanamo Bay during and immediately after her pregnancy, Tolliver did so because she "could not afford . . . to be without paid work."  (ECF No. 25-5 ¶ 17).  Thus, similar to the plaintiff in *Xiao-Yue Gu* who accepted work in another field and traveled to obtain that work, Tolliver traveled from Maryland to Guantanamo Bay to accept employment in a field entirely separate from her long-term position on the ARC project.  Defendant does not contend that Tolliver took this translation work in bad faith.

Rather, Defendant first attempts to downplay this evidence by contending that Tolliver's declaration is insufficient because Plaintiff must present physical evidence of Tolliver's job search.  (ECF No. 30-1, at 2-3).  This argument flatly ignores Federal Rule of Civil Procedure 56(c), which explicitly provides that a moving party may cite to affidavits and

declarations when moving for summary judgment, thereby implicitly recognizing that courts may consider such documents in evaluating the merits of such a motion. *See also Baney Corp. v. Agilysys NV, LLC*, 773 F.Supp.2d 593, 600 (D.Md. 2011) ("To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists." (citing *Matshshita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

Defendant then attempts to argue that Tolliver's failure to meet with Defendant regarding her removal and reassignment constitutes failure to mitigate damages, despite Carroll's concession that no available positions existed for Tolliver at the scheduled meeting time. Specifically, Defendant alleges that this failure "foreclosed [Defendant's] ability" to place her in other available positions. (ECF No. 30-1, at 8). Defendant further maintains that if Tolliver had contacted Defendant after her pregnancy, "it is likely" that Defendant could have placed her in an open position (*Id.*). Defendant offers no evidence to support either of these assertions. Plaintiff responds in two ways. Plaintiff first contends that Tolliver's duty to mitigate did not require her to accept any potential offer of alternative employment from Defendant while her position on the ARC project remained open. (ECF No. 25-3, at

31

21).   Additionally,  Plaintiff  emphasizes  that  Carroll  admitted
Defendant   had   no   alternative   employment   opportunities   for
Tolliver following her removal.   *Id.*

As  an  initial  matter,  Plaintiff's  assertion  that  "[a]n
employer's offer of alternative employment will not cut-off back
pay when the claimant's position remains available" misconstrues
the  law  regarding  a  claimant's  duty  to  mitigate  damages.   (ECF
No.  25-1,  at  21).[8]   Plaintiff  cites  language  from  a  well-known
United  States  Supreme  Court  opinion  in  setting  forth  this
proposition.   In  a  footnote  to  *Ford Motor Co. v. EEOC*,  the  Court
parenthetically   described   the   holding   of   a   National   Labor
Relations  Board  decision  as  follows:  "offer  of  reinstatement
ineffective  when  discharged  employee  offered  a  *different*  job,
though  former  position  still  existed."    458  U.S.  at  231  n.16
(emphasis  added)  (citing  *Wonder Markets, Inc.*,  236  N.L.R.B.  787,
787  (1978),  *enforced*  598  F.2d  666  (1st  Cir.  1979),  *overruled on
other grounds by N.L.R.B. v. Wright Line*,  662  F.2d  899  (1st  Cir.
1981)).

A  careful  reading  of  the  *Ford Motor*  and  *Wonder Markets*
opinions  suggests  a  more  reasoned  interpretation  of  the  Court's
statement  than  that  proffered  by  Plaintiff.    The  *Ford Motor*
Court  provided  the  *Wonder Markets*  citation,  along  with  several

---

[8]   Plaintiff  makes  this  argument  in  regard  to  Proctor  and
Tisdale  as  well.    For  the  reasons  discussed  below,  it  fails  as
to all of the removed employees.

others, to support the now-axiomatic proposition that a claimant need not accept a demotion or demeaning position in order to mitigate damages. *Id.* at 231. The Court's reference to *Wonder Markets* thus seems to illustrate that a position differing markedly from the employee's former position may qualify as a demotion or demeaning position – one that a claimant need not accept. The *Wonder Markets* opinion confirms this conclusion, revealing that an administrative law judge had reasoned that a non-supervisory position was not "substantially equivalent" to a supervisory position before rejecting the employer's proposed reinstatement offer. 236 N.L.R.B. at 787. The *Ford Motor Co.* and *Wonder Markets* opinions thus fail to support Plaintiff's proposed rule of law.

Indeed, other cases suggest that a claimant's failure to accept alternative employment from the discriminating employer *can* constitute failure to mitigate damages. *See, e.g.*, *Anastasio v. Schering Corp.*, 838 F.2d 701, 708 (3rd Cir. 1988) (noting that an employer could demonstrate failure to mitigate by presenting evidence that the claimant declined a substantially equivalent position offered by the employer).

Plaintiff nonetheless succeeds in demonstrating that Tolliver's failure to meet with Defendant regarding potential reassignment does not preclude summary judgment in Plaintiff's favor. Only Plaintiff presents evidence regarding the impact of

33

Tolliver's failure to attend that meeting, and this evidence indicates that Defendant could not have reassigned Tolliver to another position even if she had attended the meeting. (*See* ECF No. 25-3, at 64 (stating that Defendant had no positions "in mind" for Tolliver at the scheduled meeting time)). Defendant's memorandum in opposition to Plaintiff's motion baldly asserts that Defendant could have provided a position for Tolliver if she had attended this meeting or contacted Defendant following her pregnancy, but Defendant offers no evidentiary support for these propositions. (ECF No. 30-1, at 3). To avoid summary judgment in the movant's favor, the non-moving party "must present *evidentiary matter* showing that there is a genuine issue of material fact that is worth bringing to trial." 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice & Procedure* § 1327 (3[d] ed. 2010); *see also Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (explaining that "the nonmoving party . . . cannot create a genuine issue of material fact through mere speculation"). Defendant fails to present such evidence here, instead only presenting conclusory statements in its brief to support these assertions. Summary judgment in Plaintiff's favor as to Tolliver's mitigation efforts is therefore warranted.

34

    2.   **Defendant Creates Genuine Issues of Material Fact
         Regarding Proctor's Mitigation Efforts**

Plaintiff next contends that Proctor sufficiently mitigated her damages by posting resumes on two leading job-search websites and by accepting temporary one-day assignments offered by Defendant because "she needed to have an income and no better paying job was available." (ECF No. 25-1, at 9). Defendant responds in two ways. First, as with Tolliver, Defendant contends that Proctor's declaration documenting her job-search efforts is insufficient because Plaintiff did not submit physical evidence of Proctor's job search. (ECF No. 30-1, at 7). This argument fails for the same reason discussed above. Second, Defendant asserts that Proctor rejected both temporary and long-term placements that it offered following her removal from the ARC project, supporting this assertion with an affidavit from its President and CEO. (*Id.* at 6; ECF No. 30-7 ¶¶ 4-5).

Although a claimant who suffered adverse employment action in regard to a full-time position *may* demonstrate that she has mitigated damages by applying for open positions and accepting part-time employment, the duty to mitigate does not require a claimant to accept a demotion or demeaning position. *See Ford Motor Co.*, 458 U.S. at 231; *Newhouse v. McCormick & Co.*, 110 F.3d 635, 641 (8th Cir. 1997) (finding that a plaintiff mitigated

35

his damages by applying for comparable positions, seeking help from a job service, and accepting the only job – a part-time position – offered to him after the defendant unlawfully refused to hire him based on age).    The statutory duty to mitigate, however, precludes the claimant from refusing a substantially equivalent job offer, whether offered by the defendant or another employer.    *Ford Motor Co.*, 458 U.S. at 232; *see also Newhouse*, 110 F.3d at 641; *Anastasio v. Schering Corp.*, 838 F.2d at 708.    Whether a position qualifies as substantially equivalent is generally a question for the trier of fact.    *See Parrish v. Immanuel Medical Center*, 92 F.3d 727, 735 (8th Cir. 1996) (evaluating a trial verdict as to damage mitigation and explaining that "reasonable minds could conclude that the position offered . . . was not substantially equivalent").    Here, similar to the plaintiff in *Newhouse*, Plaintiff presents evidence that Proctor posted resumes and accepted temporary employment offered by Defendant in order to mitigate the damages stemming from her unlawful removal from the ARC project.    Defendant, however, creates two material issues of fact that preclude summary judgment in Plaintiff's favor as to Proctor's mitigation efforts.

First, Defendant's assertion that Proctor actually declined many of the temporary assignments it offered to her creates an issue of material fact rendering summary judgment inappropriate.

Plaintiff contends that "a temporary assignment is not substantially equivalent to a full-time placement" as a matter of law, thus suggesting that Proctor's duty to mitigate did not obligate her to accept these positions even if offered. (ECF No. 31, at 5). Plaintiff, however, presents no legal authority to support this proposition, and this court has identified persuasive case law reasoning to the contrary. *See, e.g.,* *Miles-Hickman v. David Powers Homes, Inc.*, 613 F.Supp.2d 872, 888 (S.D.Tex. 2009) (eschewing a "*per se*" distinction between "temporary" and "permanent" employment and instead focusing on the relative opportunities, compensation, job responsibilities, and employment conditions of the two positions in determining whether they were substantially equivalent) (citing *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 486 (5th Cir. 2007)). Therefore, Plaintiff cannot avoid Defendant's evidence that Proctor rejected temporary positions simply by claiming that temporary positions are not substantially equivalent to full-time positions as a matter of law.[9]

---

[9] Plaintiff also attempts to avoid Defendant's evidence by contending that Defendant must prove the amount of income that the claimant "might have . . . earned had the claimant's efforts been diligent." (ECF No. 31-1, at 4 (citing *Chace v. Champion Spark Plug Co.*, 732 F.Supp. 605, 610 (D.Md. 1990)). As an initial matter, this assertion – even if true – neglects to consider that Defendant has not presented its own motion for summary judgment as to Proctor's mitigation efforts, but has instead merely opposed Plaintiff's motion. To avoid summary judgment, the non-moving party is only required to present

Ultimately, a factual dispute exists regarding the temporary positions offered to Proctor.  Proctor claims that she accepted two one-day assignments from Defendant that paid less than her position on the ARC project, potentially suggesting that these positions, although accepted, were not substantially equivalent to the ARC project position.  (ECF No. 25-9 ¶¶ 10-11; ECF No. 25-1, at 20).  Carroll, however, maintains that Proctor declined numerous temporary positions – duration unspecified – offered by Defendant, indicating that Proctor may have rejected positions qualifying as substantially equivalent employment.  (ECF No. 30-7 ¶¶ 4-5).  The resulting contradiction creates a material dispute of fact, which Plaintiff neither addresses nor explains in its reply.

---

evidence demonstrating the existence of a material dispute of fact.  In regard to Proctor's mitigation efforts, Defendant has done so.  To the extent that Plaintiff raises the same argument as to Defendant's cross-motion regarding Tisdale's mitigation efforts, Plaintiff appears to misstate the law.  In *Chace*, the defendant presented evidence that the claimant turned down substantially equivalent employment, and the court considered this fact in calculating the claimant's front pay award.  732 F.Supp. at 610.  In computing that award, however, the court noted that the defendant had failed to provide it with evidence regarding the amount by which this failure to mitigate should reduce damages.  The court then refused to reduce the amount of the award despite the claimant's failure to mitigate.  *Chace* thus indicates that the party charged with calculating damages must quantify the amount by which a claimant failed to mitigate damages *after* a defendant successfully defends on that issue. It does not, as Plaintiff contends, indicate that a defendant must quantify this amount to satisfy its initial burden.

Additionally, Defendant's evidence that Proctor failed to accept a long-term placement at the Pentagon creates a second issue of material fact. Unlike in *Newhouse*, where no evidence existed to suggest that the plaintiff turned down long-term employment substantially equivalent to the former position, such evidence exists in the present action. Plaintiff's memorandum in support of its motion and its reply fail to mention this proposed long-term placement and to explain why, if offered, that placement would not constitute substantially equivalent employment. As a result, Defendant identifies another material issue of fact regarding Proctor's mitigation efforts. Summary judgment in Plaintiff's favor on this issue is therefore not warranted.

### 3. Genuine Issues of Material Fact Exist Regarding Tisdale's Mitigation Efforts, Thus Precluding Summary Judgment in Either Party's Favor

Finally, Plaintiff moves for summary judgment as to Tisdale's effort to mitigate damages, and Defendant both opposes this motion and submits its own cross-motion as to Tisdale's failure to mitigate damages. The court will examine Plaintiff's motion, in light of Defendant's opposition, before turning to the merits of Defendant's cross-motion.

Plaintiff contends that Tisdale engaged in extensive job-search efforts following her termination from the ARC project in July 2009. (ECF No. 25-1, at 20-21). Citing Tisdale's

declaration as well as copies of Tisdale's e-mail records, Plaintiff notes that Tisdale networked and applied for more than 100 positions after her removal. (ECF No. 25-8 ¶ 20; ECF No. 25-1, at 20). In addition, Plaintiff sets forth evidence that Tisdale enrolled in classes through an online university to enhance her chances of obtaining employment and later accepted a long-term placement from Defendant at the Pentagon in October 2009, although Tisdale claimed that the position paid less than the ARC project. (ECF No. 25-8 ¶ 17). Finding that this position was "not available after [she] gave birth," Tisdale reinitiated her job search efforts by applying for other open positions. (*Id.* at ¶ 19). Thus, similar to the *Newhouse* plaintiff discussed above, who sufficiently mitigated his damages by applying for numerous open positions and accepting the only job offer he received, Plaintiff here maintains that Tisdale's mitigation efforts were sufficient to warrant summary judgment in Plaintiff's favor.

Defendant opposes Plaintiff's motion using two arguments, each creating material issues of fact that preclude summary judgment in Plaintiff's favor. First, Defendant asserts that it offered Tisdale multiple temporary assignments, duration unspecified, many of which she declined. (ECF No. 30-1, at 4; ECF No. 30-7 ¶ 6). Here, Plaintiff again contends that, as a matter of law, temporary employment is not substantially

40

equivalent to permanent employment, but this argument fails for the reasons previously discussed.    Plaintiff then contends that the court should grant summary judgment in its favor despite the evidence of these temporary offers because Defendant did not submit additional evidence regarding "how many assignments were available, . . . the job duties for the assignments, the hours of employment or the pay and benefits for the assignments." (ECF No. 31, at 7).   This argument, however, misunderstands the nonmovant's burden on a motion for summary judgment.[10]    "The burden on the nonmoving party is not a heavy one; the nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."   Wright, Miller, and Kane, *supra*, at § 2727.   Defendant here has set forth facts showing that Tisdale declined its temporary offers of employment.    In so doing, Defendant has created a material issue of fact as to Tisdale's mitigation efforts by suggesting that she may have turned down offers of substantially equivalent employment – a suggestion to which Plaintiff does not respond.[11]

---

[10]   The same argument does carry force as to Defendant's cross-motion for summary judgment, discussed below.   In that instance, Defendant is not only the movant, but also the party who would bear the burden of persuasion at trial.

[11]   Although Plaintiff does not set forth facts in its briefs regarding these temporary employment offers, its own record highlights the factual disputes that render this issue improper

Defendant additionally contends that Tisdale's failure to request reinstatement on the Pentagon project after she gave birth constitutes "abandonment" of that position and failure to mitigate damages.  (ECF No. 30-1, at 4-5).  To support this contention, Defendant offers an affidavit from Carroll, stating that Tisdale did not contact Defendant and, if she had done so, Defendant would have placed her in "her prior or equivalent position" at the Pentagon.  (ECF No. 30-7 ¶ 11).  The Fourth Circuit has previously concluded that a claimant's failure to remain in substantially equivalent employment, once secured, "risks or even insures a loss of back pay."  *Brady*, 753 F.2d at 1273.

Plaintiff does not dispute this general principle, instead setting forth factual discrepancies about the nature of the position and its alleged availability, further rendering summary judgment improper.[12]  Plaintiff first suggests that Tisdale's

---

for summary judgment.  Indeed, while Tisdale's declaration states that she received only two temporary assignments lasting one day, Plaintiff's reply to Defendant's opposition and cross-motion cites an exhibit stating that Defendant had offered Tisdale at least four temporary assignments, duration unknown, all of which she appeared to reject.  (ECF No. 25-5, at 2; ECF No. 31-2, Ex. A).  This contradictory evidence set forth by Plaintiff thus underscores the material factual dispute regarding Tisdale's mitigation efforts.

[12] Plaintiff does contend that the duty to mitigate did not require Tisdale to accept any other employment with Defendant while her position at the ARC project remained open.  As explained previously in regard to Tolliver's mitigation efforts,

position at the Pentagon was not substantially equivalent to her ARC project position because the ARC project position paid $16/hour with benefits, while the Pentagon project paid only $17.24/hour without benefits. (ECF No. 31, at 7; ECF No. 31-2, at 1). Although Defendant presents a declaration stating that the Pentagon position paid "a higher rate than [Tisdale's] FBI assignment," and that Tisdale denied the offered benefits, neither party mentions the Pentagon hourly wage with benefits included or compares the positions' opportunities, responsibilities, or employment conditions. (ECF No. 30-7 ¶ 7). Therefore, material issues of fact exist regarding whether Tisdale's placement at the Pentagon was substantially equivalent to her ARC project position. *See Parrish*, 92 F.3d at 735 (suggesting that triers of fact should resolve issues regarding whether two positions are substantially equivalent in an employment discrimination action).

Even assuming that the positions were substantially equivalent, material factual disputes remain regarding the availability of Tisdale's position at the Pentagon following her pregnancy. (ECF No. 31, at 6). Indeed, while Defendant offers evidence that Tisdale could have obtained an "equivalent position" at the Pentagon after giving birth, Tisdale asserts in

this argument relies on a misstatement of the law and is therefore unpersuasive.

43

her declaration that Defendant had recently entered bankruptcy and that such a position "was not available" at that time. (ECF No. 30-7, at 11; ECF No. 25-8 ¶ 19).  Apparently ignoring the fact that its own evidence here derives from an affidavit, Defendant contends that Tisdale's declaration regarding the position's unavailability is insufficient to create a factual dispute on this issue.  As previously discussed, however, the Federal Rules of Civil Procedure permit courts to consider both affidavits and declarations on summary judgment. *See* Fed.R.Civ.Proc. 56(c).  Because both parties have set forth evidence disputing the position's availability, an additional dispute of material fact exists to preclude summary judgment in Plaintiff's favor.

Defendant's cross-motion for summary judgment is also denied because Defendant wholly fails to satisfy its burden of proving Tisdale's failure to mitigate.  Disregarding completely that Tisdale applied to more than 100 open positions and engaged in networking activities, Defendant raises only the two arguments examined above when requesting that the court grant summary judgment in its favor as to Tisdale's damage mitigation efforts.  For the reasons previously explained, numerous issues of material fact exist in relation to these arguments. Additionally, in arguing that Tisdale failed to mitigate by rejecting its temporary employment offers, Defendant makes no

attempt to demonstrate that the offers constituted substantially equivalent employment that Tisdale had to accept in order to mitigate her damages. Evidence of such offers may suffice where Defendant merely opposes Plaintiff's motion because the court must construe the facts presented in the light most favorable to the nonmoving party. Defendant, however, ultimately bears the burden of proof on this issue at trial, and, on cross-motion for partial summary judgment, a mere statement that Proctor rejected an unspecified number of temporary employment positions fails to satisfy this burden. Therefore, summary judgment in Defendant's favor as to Tisdale's mitigation efforts is improper.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment will be granted in part and denied in part, while Defendant's cross-motion for partial summary judgment will be denied. A separate order will follow.

<pre>
                              /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge
</pre>